UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
AJAY SARASWAT,

                Plaintiff,

- against -

SELVA JAYARAMAN, BUSINESS
INTEGRA, INC., PRATIBHA RAMDOSS, and
JAGAN PARATHASARATHY,

                Defendants.
-------------------------------------------------------X

**ORDER ACCEPTING IN PART AND
REJECTING IN PART
REPORT & RECOMMENDATION**
15-CV-4680 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Ajay Saraswat ("Plaintiff") filed this action on August 10, 2015 (Dkt. 1) and filed an Amended Complaint on November 16, 2015 (Dkt. 11),[1] alleging a variety of State law claims, as well as federal law claims regarding forced labor and peonage under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1581 *et seq*. On January 29, 2016, Defendants Selva Jayaraman, Business Integra, Inc., Pratibha Ramdoss, and Jagan Parathasarathy (collectively, "Defendants") moved to dismiss this action. (*See* Dkts. 12–14.) The Court referred the motion to the Honorable Lois Bloom for a Report and Recommendation ("R&R") on April 20, 2016, and Judge Bloom issued an R&R on July 25, 2016, recommending that the motion be granted in its entirety (*see* Dkt. 16 (R&R)). Plaintiff filed objections to the R&R on August 8, 2016, and Defendants responded on August 11, 2016. (*See* Dkts. 17–18.)

      For the reasons stated below, the Court accepts, in their entirety, the portions of the R&R dealing with Plaintiff's State law causes of action and with jurisdictional issues, but rejects the

---

[1] Plaintiff amended his complaint to correct deficiencies identified by Defendants in pre-motion conference proceedings held before the Court on October 28, 2015. (*See* 10/28/15 Minute Entry; *see also* Dkts. 8, 9.)

1

portion dealing with Plaintiff's federal causes of action under the TVPA. The Court finds that Plaintiff has pleaded his TVPA claims sufficiently to survive the motion to dismiss phase, and the parties shall proceed to discovery thereon. The Court adopts the factual background set forth in Judge Bloom's R&R (*see* R&R at 1–4), and otherwise presumes the parties' familiarity with the facts.

*LEGAL STANDARD*

Rule 72 of the Federal Rules of Civil Procedure permits magistrate judges to determine dispositive pretrial matters even without the parties' consent. *See* Fed. R. Civ. Proc. 72(b). District courts "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Courts "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to," *see* Fed. R. Civ. P. 72(b)(3), but where "no timely objection has been made, the district court need only be satisfied that there is no clear error on the face of the record," *see Bailey v. Wells Fargo Bank, N.A.*, No. 15-CV-3249, 2016 U.S. Dist. LEXIS 86800, at *3 (E.D.N.Y. July 5, 2016). *See also Johnson v. Goord*, 487 F. Supp. 2d 377, 379–80 (S.D.N.Y. 2007) (only clear error review where "no objections are filed, or where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition") (quotation marks omitted); *Baptichon v. Nev. State Bank*, 304 F. Supp. 2d 451, 453 (E.D.N.Y. 2004) ("clear error" review of R&R where no objections made).

*DISCUSSION*

I.  Federal Law Claims

Plaintiff objects to the R&R only as to Judge Bloom's "analysis of [Plaintiff's] federal

causes of action." (Dkt. 17 at ECF[2] 1.) Therefore, the Court reviews *de novo* the R&R's recommendation to dismiss Plaintiff's TVPA claims.[3]

Plaintiff alleges violations of 18 U.S.C. §§ 1589, 1592, 1593(a),[4] and 1595 ("Sections 1589, 1592, 1593(a), and 1595," respectively). (*See* Dkt. 11 ¶¶ 46–53.) He claims that Defendants, in violation of Section 1589, "knowingly and willingly [sic] placed [Plaintiff] in a condition of servitude in which he was forced to abstain from working for other potential employers and could only choose to work for [Defendants]," and did so, *inter alia*, "by means of serious harm or threats of serious harm," "by means of the abuse or threatened abuse of law or legal process," and "by means of a scheme, plan, or pattern intended to cause [Plaintiff] to believe that, if he did not

---

[2] All citations to "ECF" refer to page numbers generated by the Electronic Court Filing ("ECF") system, and not the document's internal pagination.

[3] In his opposition to Defendants' motion to dismiss, Plaintiff did assert, albeit perfunctorily, at least some of the same arguments regarding his federal law claims as he now asserts in objecting to Judge Bloom's R&R. *See* Dkt. 14 at ECF 12–13 (with respect to his federal causes of action, Plaintiff argued that "[t]he Trafficking Victims Protection Act exists primarily to address modern forms of labor trafficking, such as the kind practiced by Defendants," that "Defendants have misused the legal process to coerce him into providing labor," that "Defendants took possession of and restricted his access to his travel documents including his passport," and that threats of deportation are sufficient to establish a claim of involuntary servitude) (citing, *inter alia*, *United States v. Shackney*, 333 F.2d 475 (2d Cir. 1964)). Nevertheless, out of an abundance of caution, and in part because Plaintiff's objections are broader than the arguments presented in his initial opposition papers and thus do not "merely recite the same arguments presented to the magistrate judge," *Armatas v. Maroulleti*, No. 08-CV-310, 2010 U.S. Dist. LEXIS 112908, at *4 (E.D.N.Y. Oct. 22, 2010) (quotation marks omitted), the Court reviews this portion of the R&R *de novo*.

[4] In his Amended Complaint, Plaintiff cites 18 U.S.C. § 1593(a), but the related allegations in the Complaint sound under Section 1593A, which penalizes individuals who "knowingly benefit[], financially or by receiving anything of value, from participation in a venture" engaged in a violation of other TVPA provisions. (*Compare* Dkt. 11 ¶ 52, *with* 18 U.S.C. § 1593A.) Plaintiff appears also to seek restitution under Section 1593(a), as a remedy for Defendants' alleged violations of Sections 1589 and 1592. (*See* Dkt. 14 at ECF 12–13.) However, as discussed *infra*, while the Court ordinarily would construe the Amended Complaint as stating a Section 1593A claim, any such claim has been abandoned by Plaintiff. *See infra* n.9.

3

perform such labor or services, he would suffer serious harm." (*Id*. ¶¶ 46–47.) Plaintiff further claims that, in violation of Section 1592, Defendants "knowingly concealed, removed, confiscated, and possessed actual and purported immigration documents" belonging to him, "with the intent to violate" and "in the course of violations of 18 U.S.C. § 1589," in order to "prevent or restrict or to attempt to prevent or restrict, without lawful authority" Plaintiff's liberty to move or travel, "in order to maintain the labor or services of [Plaintiff]." (*Id*. ¶¶ 48–51.)[5]

A. The TVPA's Statutory Framework

The TVPA makes it unlawful to "knowingly provide[] or obtain[] the labor or services of a person" using "threats of serious harm to that person," "the abuse or threatened abuse of law or legal process," or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person . . . would suffer serious harm . . . ." 18 U.S.C. § 1589(a). The TVPA defines "abuse or threatened abuse of law or legal process" as "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure" on the victim to take, or refrain from taking, some action. *Id*. § 1589(c)(1). "Serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id*. § 1589(c)(2).

In addition, the TVPA punishes those who "knowingly . . . confiscate[] or possess[] any actual or purported passport or other immigration document, . . . in the course of a violation of [18

---

[5] Plaintiff also asserts a cause of action under Section 1595 (*see* Dkt. 11 ¶ 53), but that provision merely grants Plaintiff a private right of action for violations of substantive statutory provisions of the TVPA, and is not a standalone claim.

4

U.S.C. § 1589]; [or] with intent to violate [that provision] . . . ." *Id*. § 1592(a). The TVPA also imposes liability on those who "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of [18 U.S.C. §1592]," if they did so "knowing or in reckless disregard of the fact that the venture ha[d] engaged in such violation." *Id*. § 1593A.

The TVPA extends liability to "[w]hoever *attempts* to violate" Section 1589, *id*. § 1594(a) (emphasis added), and to "[w]hoever conspires with another to violate" Sections 1589 and 1592, *id*. § 1594(b), and permits victims to "bring a civil action against" the violators and to "recover damages and reasonable attorneys fees," *id*. § 1595.

B.  The R&R, Plaintiff's Objections, and Defendants' Response

Relying on *United States v. Kozminski*, 487 U.S. 931 (1988), Judge Bloom concluded that both involuntary servitude (or forced labor) and peonage "require[] that the individual [plaintiff] be forced to perform labor," and because "[i]t is undisputed that plaintiff never provided labor for defendants"—and in fact "plaintiff alleges defendants committed fraud *because* he never was given work to perform for them"—Plaintiff's TVPA claims should be dismissed for failure to state a claim. (R&R at 24 (emphasis in original).) In a footnote, the R&R cites Black's Law Dictionary to define forced labor and involuntary servitude as "'[t]he condition of one forced to labor – for pay or not – for another by coercion or imprisonment.'" (*Id*. at 24 n.16 (alteration in original).) Judge Bloom notes that, while "Plaintiff alleges psychological force" being brought to bear upon him by Defendants, he "does not allege that he was forced to provide labor to defendants." (*Id*.)

Plaintiff objects to this recommendation, arguing that "he did in fact perform labor for the Defendants, although they gained no profit from same." (Dkt. 17 at ECF 1.) He contends that "labor" in the context of the TVPA should be interpreted more broadly than the R&R contemplates,

5

as "an 'expenditure of physical or mental effort especially when fatiguing, difficult, or compulsory,'" including the provision of services, "defined as 'useful labor that does not produce a tangible commodity.'" (*Id.* (citing *United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010)).) The labor that Plaintiff was coerced into performing for Defendants, Plaintiff argues, was searching for a job: "Defendants coerced Plaintiff into applying to job after job and forced him to submit countless applications and resumes in the hope that he would find an employer who would pay 30% of Plaintiff's earnings to Business Integra," a grueling task "so mentally fatiguing that Plaintiff became physically ill." (*Id.* at ECF 2. *See also* Dkt. 11 ¶ 26.) Plaintiff draws a "crude[] analog[y]" to the relationship between "a pimp and a prostitute," insofar as, he argues, Defendants bound Plaintiff to them, but then instead of "provid[ing] him with any income," they "forced him to seek work elsewhere in the hope that they would be able to collect a share of his outside earnings or a lump sum to release him from their service." (Dkt. 17 at ECF 2.)

In response to Plaintiff's objections, Defendants argue that Plaintiff never provided labor for Defendants, and therefore his federal causes of action fail to state a claim. Defendants cite a number of cases—the majority of which predate the passage of the TVPA—for the proposition that, under a "contextual approach," "taking as a whole the set of conditions existing in the imposition of requiring the Plaintiff to work," Plaintiff's allegations do not establish that he performed labor for Defendants. (Dkt. 18 at 1–2 (quotation marks omitted).) Defendants contend further that their alleged "coercion"—threats of deportation—are insufficient to sustain Plaintiff's TVPA claims, citing a 1964 Second Circuit decision. (*Id.* at 2–3 (citing *Shackney*, 333 F.2d 475).)

C. <u>Analysis</u>

As an initial matter, both Judge Bloom's R&R and Defendants' response to Plaintiff's objections rely, in large part, on the Supreme Court's decision in *Kozminski* and other case law

6

predating the passage of the TVPA to conclude that nothing in Plaintiff's allegations meets the definition of "labor" as that term is contemplated in the forced labor and peonage context. But the *Kozminski* decision, and specifically its overly restrictive interpretation of what constitutes forced labor, is in part what motivated the passage of the TVPA. *See* H.R. Rep. No. 106-939, at 3, 5 (Oct. 5, 2000) ("Purposes and findings" of TVPA included finding that *Kozminski*'s "narrow[] interpret[ation]" of involuntary servitude resulted in an interpretation that "criminalize[d] only servitude that is brought about through use or threatened use of physical or legal coercion, and [] exclude[d] other conduct that can have the same purpose and effect," whereas "[i]nvoluntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion"). In effect, the TVPA rendered *Kozminski* obsolete and makes that decision wholly inapposite to Plaintiff's TVPA claims.[6]

Indeed, "Section 1589 is intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence," and to "provide federal prosecutors with the tools to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*." *Id*. at 101. *See also Javier v. Beck*, No. 13-CV-2926, 2014 U.S. Dist. LEXIS 95594, at *16 (S.D.N.Y. July 3, 2014) ("Congress passed the [TVPA] to correct what they viewed as the Supreme Court's mistaken holding in *Kozminski*, which limited the definition of involuntary

---

[6] Although the TVPA's substantive provisions, *e.g.*, Sections 1589, 1591, 1592, and 1593, were codified in the same section of the federal criminal code as the previously enacted statutes criminalizing peonage and sale into involuntary servitude, *e.g.*, 18 U.S.C. §§ 1581–1584, the TVPA provisions were enacted in 2000, post-*Kozminski*, and, as discussed, partially to rectify *Kozminski*. Thus, *Kozminski* involved only the pre-TVPA crimes of involuntary servitude and peonage, charged under 18 U.S.C. §§ 241 and 1584, and none of the TVPA provisions relied upon by Plaintiff here.

7

servitude to physical or legal coercion.") (citing *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)) (quotation marks omitted) (alteration omitted).

But most importantly here, as Plaintiff notes (Dkt. 17 at ECF 1), in the context of a Section 1589 claim, the Second Circuit has defined "labor" as "the 'expenditure of physical or mental effort especially when fatiguing, difficult, or compulsory,'" and "service" as "'the performance of work commanded or paid for by another.'" *Marcus*, 628 F.3d at 44 n.10. These definitions certainly appear to encompass the kind of effort expended by Plaintiff here, *i.e.*, "to find another job [in which] any potential employer [would have to] pay 30% of [Plaintiff's] earnings to [Business Integra]," as well as the coercion alleged here, *i.e.*, "[Plaintiff's] H1B [visa] would remain under [Business Integra's] control." (*See* Dkt. 11 ¶ 15.) Certainly Plaintiff's allegations are sufficient to state a claim for *attempted* forced labor, which the TVPA also prohibits. *See* 18 U.S.C. § 1594(a).[7] Had Plaintiff been successful in finding an employer willing to employ him without the transfer of his visa and to send 30% of his earnings to Defendants, Plaintiff would have been working for, or on behalf of, Defendants. Particularly at this stage of the litigation, Plaintiff has pleaded claims under the TVPA sufficiently.

The Court's conclusion is bolstered by a number of decisions issued in this Circuit since the passage of the TVPA. For example, in *Javier*, the district court rejected a motion to dismiss the plaintiff's TVPA claims where the plaintiff alleged that the defendants forced him to work in a variety of roles other than the one he had contracted to perform, for significantly less money than he had been promised, and where the defendants charged him thousands of dollars for H1B

---

[7] Plaintiff has not cited Section 1594(a) in the Amended Complaint, but his pleaded allegations appear to set forth a claim thereunder for attempted violations of Section 1589. The Court, therefore, construes the Amended Complaint as alleging, pursuant to Section 1594(a), an attempt to violate Section 1589.

8

application fees, required him to sign a confession of judgment in the amount of $15,000 as a condition of employment, "frequently warned [the plaintiff] that if he left their employment for any reason, he would be forced to pay them $15,000," and "threatened to withdraw their [H1B] petition on his behalf if [the plaintiff] questioned their conduct or refused to work as assigned." *Javier*, 2016 U.S. Dist. LEXIS 95594, at *2–5. In denying the motion to dismiss, the court relied upon a 2011 Ninth Circuit decision which "held that the threat that a non-immigrant would owe $7,500 to her employer if she quit, leaving her without 'money to leave or live,' constituted a threat of 'serious harm.'" *Id*. at *16–17 (citing *Dann*, 652 F.3d 1160, 1171). The court found the plaintiff's allegations that the defendants threatened to enforce a confession of judgment twice that amount and to "withdraw [the plaintiff's] visa application if he failed to report for work during a leave of absence," "sufficient at [the motion to dismiss] stage to satisfy the TVPA's 'serious harm['] requirement." *Id*. at *17. *See also id*. at *18 (plaintiff "sufficiently pled a claim under the TVPA" where he "allege[d] that Defendants promised him a job as a physical therapy rehab manager paying $35.53 per hour, then threatened to withdraw his visa application if he did not report to other jobs where he effectively earned $15 per hour").

The Court finds *Javier* particularly persuasive, given the striking similarity between the facts in *Javier*, including the type of coercion brought to bear on the plaintiff, and the facts alleged here. Plaintiff claims that Business Integra "requested that [Plaintiff] provide a check in the amount of $2000 as payment" for filing an H1B visa application for him (Dkt. 11 ¶ 13); that, rather than providing him with the promised employment as a mechanical engineer, Defendants "told [Plaintiff] that he needed to find another job but that any potential employer must pay 30% of [Plaintiff's] earnings to [Business Integra], and that [Plaintiff's] H1B would remain under [Business Integra's] control" (*id*. ¶ 15); that Defendants "threatened to revoke [Plaintiff's] visa

9

(which would compromise [Plaintiff's] legal status in the United States) if he did not find outside employment immediately" (*id.* ¶ 18); and that Defendants refused to transfer Plaintiff's visa unless Plaintiff paid them $15,000, and threatened to "contact immigration authorities and [have Plaintiff] deported from this country" if Plaintiff complained to anyone about Defendants' conduct or refused to pay the $15,000 (*id.* ¶¶ 22–23).

Defendants' characterization of these allegations as merely "voluntary acts of looking for a job" (Dkt. 18 at 3) both ignores the TVPA's broad definition of "labor" and fails to acknowledge Plaintiff's allegations establishing coercive conduct of the type prohibited by the TVPA, as found in *Javier*.[8] It is clear to the Court that Plaintiff's allegations are sufficient, at least at this stage of the proceedings, to support his claims that Defendants violated Sections 1589 and 1594(a) by forcing, or attempting to force, Plaintiff to perform labor—*i.e.*, searching for a job—under threats of serious harm—*i.e.*, the threat of deportation and the threat of losing his work visa unless he paid Defendants $15,000. These allegations are also sufficient to sustain Plaintiff's claim, under Section 1592, that in the course of violating Sections 1589 or 1594(a), or with intent to violate Section 1589, Defendants knowingly confiscated or possessed Plaintiff's H1B visa, holding it hostage unless Plaintiff either paid Defendants $15,000 or found an employer willing to pay

---

[8] The Court respectfully disagrees with Judge Bloom's conclusion that, because Plaintiff contends separately that Defendants committed fraud by failing to employ him, his TVPA claims must fail. (R&R at 24.) That Plaintiff contends, as a basis of his State law claims, that Defendants engaged in fraud when they failed to employ him as a mechanical engineer after promising to do so while recruiting him to pursue a career with Business Integra (*see* Dkt. 11 ¶¶ 9–10, 14), does not render him unable to pursue claims under the TVPA. Indeed, Plaintiff's TVPA claims are properly premised on the fact that Defendants failed to employ him as promised, and instead coerced him into performing the alleged forced labor of searching for alternate employment in the hopes of generating revenue for Defendants.

Defendants 30% of Plaintiff's earnings.[9]

The Court likewise finds persuasive the district court's decision in *Guobadia v. Irowa*. In that case, the court denied summary judgment on the plaintiff's TVPA claims where the plaintiff allegedly spent "most of her waking hours" performing domestic duties for the defendants' household without pay, was forced to provide her wages from two jobs directly to the defendants, and was struck by the defendants "if she indicated that she would deviate from [their] commands in any way." *Guobadia*, 103 F. Supp. 3d 325, 330–31 (E.D.N.Y. 2015). The district court held that "[a] scheme, plan or pattern violates Section 1589 where it is intended to cause a person to believe that, if she did not perform such labor or services, she or another individual would suffer serious harm." *Id*. at 334. In considering what would suffice as such "serious harm," the court concluded that the plaintiff's alleged "repeated physical, verbal, and emotional abuse" at the hands of the defendants "could rise to the level of 'serious harm' under Section 1589," and threats of such violence could rise to the level of threats of serious harm. *Id*. at 335.

The *Guobadia* court then considered defendants' "contention . . . that the Plaintiff [had] been able to come and go as she pleased from the home" and that "at no point did the Plaintiff file a report with the police or authorities," such that the defendants "were not engaging her in unlawful forced labor." *Id*. The court rejected this contention, concluding that, "even if this is true, the

---

[9] To the extent Plaintiff has asserted a claim under Section 1593A (benefitting from a venture engaged in, *inter alia*, document confiscation), however, that claim is deemed abandoned. Neither Plaintiff's opposition to Defendants' motion to dismiss, nor his objections to the R&R, addressed this particular claim, instead focusing on his claims under Sections 1589 and 1592, and his desired relief of restitution and damages under Sections 1593(a) and 1595, respectively. (*See* Dkt. 14 at ECF 12–13; Dkt. 17 at ECF 1–2.) *See Jackson v. Fed. Express*, 766 F.3d 189, 196, 198 (2d Cir. 2014) ("Generally . . . a partial response reflects a decision by a party's attorney to pursue some claims . . . and to abandon others," such that it is "appropriate," particularly where plaintiff is represented by counsel, to "infer from [plaintiff]'s partial opposition that [the] claims . . . that are not defended have been abandoned").

11

evidence must be considered under the totality of the circumstances," and that, "[i]n this regard, to the extent the Defendants may have warned the Plaintiff that she would be arrested and deported if she spoke to people outside the home, . . . 'the threat of being forced to leave the United States can constitute serious harm to an immigrant within the meaning of § 1589.'" *Id.* at 335–36 (citing, *inter alia*, *United States v. Rivera*, No. 09-CR-619, 2012 U.S. Dist. LEXIS 85090 (E.D.N.Y. June 19, 2012)) (alterations omitted). This is precisely the threat Plaintiff alleges Defendants repeatedly applied to coerce Plaintiff into looking for employment that would financially benefit Defendants. (*See* Dkt. 11 ¶ 23.) Moreover, Plaintiff alleges that these threats were made when Defendants were "aware that [Plaintiff's] legal status in the United States had become reliant upon the validity of the H1B visa," since Plaintiff had given Defendants his immigration documents "to transfer his visa from Student status to H1B employment." (*Id.* ¶ 12.) Looking at the totality of the circumstances alleged by Plaintiff, the Court concludes that, at this stage of the proceedings, Plaintiff has pleaded his TVPA claims under Sections 1589, 1592, and 1594(a) sufficiently to withstand Defendants' motion to dismiss.

None of the cases cited by Defendants alters the Court's conclusion. As noted previously, the majority of cases cited by Defendants in their response to Plaintiff's objections to the R&R predate the passage of the TVPA and therefore are irrelevant to the Court's analysis. Only two decisions post-date the TVPA's enactment: *Calicchio v. Sachem Central School District*, No. 14-CV-5958, 2016 U.S. Dist. LEXIS 59873 (E.D.N.Y. May 5, 2016), and *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012). (*See* Dkt. 18 at 2.) The Court does not find either decision persuasive.

In *Calicchio*, a student asserting, *inter alia*, a Thirteenth Amendment claim of involuntary servitude alleged that he "was forced to work under threat of expulsion from school and that he

would be arrested by the FBI if he did not perform [this] work." *Calicchio*, 2016 U.S. Dist. LEXIS 59873, at *7.[10] The court's dismissal of the complaint was very fact-specific. Relying on *Kozminski*, the court found that "[t]here are no allegations that [plaintiff] was subject to the use or threat of physical restraint or injury," and that threats of expulsion or arrest by the FBI were "insufficient, without further facts, to constitute the use or threat of coercion through law or legal process." *Id*. at *7–9. More specifically, the court found that "there [wa]s an absence of specific factual allegations concerning how often [the plaintiff] was pulled out of his academic schedule, the number of hours he spent working [for the defendants], the conditions he faced, and the nature of the work he was forced to perform," and an absence of "specifics such as when and how often he was threatened with expulsion and/or arrest." Based on these pleading deficiencies, the court held that plaintiff's "Thirteenth Amendment claim is not plausible," and therefore dismissed the claim, with leave to amend. *Id*. at *11–12. But the court in *Calicchio* was not presented with any TVPA claims and was not called upon to consider the TVPA's broad definition of labor, expanding beyond the holding of *Kozminski*. Moreover, unlike the plaintiff in *Calicchio*, Plaintiff in this case *has* pleaded sufficient factual allegations regarding how, when, and by whom he was threatened, and what labor he was forced to perform on Defendants' behalf, to state his TVPA claims.

The Court is also not persuaded by the Third Circuit's decision in *Zavala*. In that case, the illegal immigrant plaintiffs sued the defendant for, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), alleging, as a predicate act, involuntary

---

[10] Significantly, *Calicchio* did not involve any alleged violations of the TVPA; rather, the plaintiff in that case asserted various State law claims, as well as claims under 42 U.S.C. § 1983 premised on alleged violations of the Fourth, Thirteenth, and Fourteenth Amendments. *Calicchio*, 2016 U.S. Dist. LEXIS 59873, at *5.

13

servitude,[11] based on the defendant knowingly recruiting and hiring illegal immigrants to perform work and threatening to report the plaintiffs to immigration authorities if they failed to work. *Zavala*, 691 F.3d at 530–31. The Third Circuit affirmed the district court's determination that the plaintiffs had failed to allege a plausible claim of involuntary servitude. Citing *Kozminski*, the court reasoned that involuntary servitude was meant to cover compulsory labor akin to African slavery, such as being "held in a labor camp or forced into daily labor by a religious sect." *Id*. at 540. The court also held that the threat of deportation did not save plaintiffs' involuntary servitude claim. While recognizing that *Kozminski* left open the possibility that "threatening an immigrant with deportation might amount to a 'threat of legal coercion' resulting in involuntary servitude," the Third Circuit relied on the Second Circuit's 1964 decision in *Shackney*, 333 F.2d 475, to conclude that, "[a]bsent some special circumstances, threats of deportation are insufficient to constitute involuntary servitude." *Id*. at 540–41. The *Zavala* panel further concluded that because the plaintiffs "d[id] not claim that they were compelled to come to work each day," and because they "often switched jobs, freely moving to different employers in different cities" without being pursued by their previous employer, the threats of deportation made to them were "legally insufficient to constitute involuntary servitude." *Id*. at 541.

*Zavala* is of no relevance here. First, the Court is not bound by the decision in *Zavala*. Second, *Zavala* did not involve any TVPA provisions; rather, it involved only the pre-TVPA involuntary servitude statute, 18 U.S.C. § 1584, which arguably is still governed by *Kozminski*. Third, the *Zavala* court's reliance on *Kozminski* is completely inapposite here because Plaintiff's

---

[11] Notably, this predicate act of involuntary servitude was charged pursuant to the pre-TVPA statute, 18 U.S.C. § 1584, and not one of the TVPA provisions, such as Section 1589 (forced labor). *See Zavala*, 691 F.3d at 540.

14

TVPA claims are governed by the Act's definitions and related case law regarding the elements of those claims.

For all of these reasons, the Court reverses the R&R's recommendation that Plaintiff's TVPA claims be dismissed, and instead denies Defendants' motion to dismiss those claims. Plaintiff shall proceed on his claims for forced labor, document confiscation, and attempted forced labor, pursuant to Sections 1589, 1592, and 1594(a), respectively.

II.     State Law Claims and Jurisdictional Issues

Because Plaintiff has not objected to any other portion of the R&R—namely, those dealing with Plaintiff's State law claims and jurisdictional issues—the Court reviews them for clear error. Finding none, the Court adopts those portions of the R&R in their entirety.[12] *See Bailey*, 2016 U.S. Dist. LEXIS 86800, at *3; *Johnson*, 487 F. Supp. 2d at 379–80; *Baptichon*, 304 F. Supp. 2d at 453.

*CONCLUSION*

For the foregoing reasons, Judge Bloom's R&R is accepted with respect to Plaintiff's State law claims and jurisdictional issues, but rejected with respect to Plaintiff's federal law claims under

---

[12] With respect to Plaintiff's unjust enrichment claim, Judge Bloom recommended dismissal on statute of limitations grounds, concluding that the relevant statute of limitations for unjust enrichment claims seeking monetary damages, as Plaintiff seeks here, is three years, such that any conduct occurring prior to October 2010 would be time-barred. (R&R at 22–23.) Plaintiff alleged that he "continued to seek jobs . . . through [the] end of December 2009" (Dkt. 11 ¶ 22), but because Judge Bloom concluded that "plaintiff fails to allege he performed any work for defendants," she concluded that any conduct after October 2007—when Plaintiff paid Business Integra $2,000 for his H1B application—could not form the basis of Plaintiff's unjust enrichment claim. (R&R at 22–23.) Although the Court has found that Plaintiff's job-search efforts constituted labor under the TVPA, it is unclear whether that definition of labor could or should be applied under New York common law. In any event, the Court need not resolve this issue because, given Plaintiff's claim that his job-search efforts ended in December 2009, his unjust enrichment claim would still be barred by the three-year statute of limitations, which ran at the latest by December 2012.

15

Sections 1589, 1592, and 1594(a) of the TVPA. 28 U.S.C. § 636(b)(1). Plaintiff shall be permitted to proceed with those claims, for both restitution under Section 1593(a) and damages under Section 1595, as to Defendants Business Integra and Parathasarathy, and the parties shall conduct discovery thereon under Judge Bloom's supervision.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 28, 2016
      Brooklyn, New York